UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**ORIGINAL**

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

CIVIL MINUTES - GENERAL

✓ PRIORITY SEND
✓ ENTER
✓ NO JS-6

| Case No. | CV 03-7276 DSF (Ex) | Date | April 7, 2005 |
|---|---|---|---|

| Title | Dennis Ryan v. County of Santa Barbara, et al. |
|---|---|

Present: The Honorable  DALE S. FISCHER, United States District Judge

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers)   Order GRANTING Defendant Barbara Gregory's Motion for Summary Judgment

## I. INTRODUCTION

The Notice of Motion and Motion for Partial Summary Judgment of Defendants County and Barbara Gregory; Memorandum of Points and Authorities in Support Thereof ("Motion"); Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Partial Summary Judgment by Defendants County of Santa Barbara and Barbara Gregory ("SOUF"); the Declarations of Michael Youngdahl, Raul Jiminez, Bobby Cobb, and James Woessner; and Defendant County of Santa Barbara's Notice of Errata in Motion for Partial Summary Judgment were all filed on February 22, 2005.

Plaintiff Dennis Ryan's Opposition to Defendants' Motion for Partial Summary Judgment ("Opp."); Plaintiff Dennis Ryan's Objections to Evidence Offered by Defendant County of Santa Barbara and Barbara Gregory ("Objections to Evidence"); Plaintiff Dennis Ryan's Request for Judicial Notice Pursuant to Fed. R. Evid. 201; and Plaintiff Dennis Ryan's Separate Statement of Genuine Issues ("SOGI") were filed on February 28, 2005. Plaintiff Dennis Ryan's Revised Separate Statement of Genuine Issues was filed on March 7, 2005.

Defendant County of Santa Barbara's Reply to Plaintiff's Opposition to Partial Summary Judgment; Defendants County of Santa Barbara's and Barbara Gregory's Objections to Evidence in Support of Plaintiff's Opposition to County's Motion for Partial Summary Judgment; and the Declaration of Michael M. Youngdahl in Support of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Defendant County of Santa Barbara's Reply to Opposition to County's Motion for Partial Summary Judgment were filed on March 7, 2005.

On March 18, 2005, this Court issued an Order Denying the Motion for Partial Summary Judgment Brought by Defendant County of Santa Barbara. The Court declined to rule on Defendant Barbara Gregory's Motion because evidence submitted by Defendant Prison Health Services, Inc. ("PHS") called into question a fact potentially relevant to that analysis. Id., 14:4-7. The Court also issued an Order, on March 15, permitting Defendant PHS to file a signed copy of the Supplemental Declaration of Deborah Schutz ("Supplemental Declaration") by March 18, and permitting Defendant Gregory to file a response to the Supplemental Declaration on or before March 22, 2005.

On March 18, 2005, Defendant PHS filed a Second Notice of Errata Re the Supplemental Declaration, with a signed copy of the Supplemental Declaration attached. On March 22, 2005, Defendant Barbara Gregory filed a Supplemental Brief, and Objections to Evidence in Support of Deborah Schutz' Supplemental Declaration.

## II. LEGAL STANDARD

### A. Summary Judgment Generally

Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(e).

Declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. See Fed. R. Civ. P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. Taylor v. List, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989).

When parties submit cross-motions for summary judgment, each motion must be considered on its own merits. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). Nevertheless, the Court must consider the appropriate evidentiary material identified and submitted in support of both motions before ruling on each of them. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL
### PRIORITY SEND

**B.   Qualified Immunity of Individuals Acting in their Official Capacity**

- Defendant government officials can plead "qualified" or "good faith" immunity as an affirmative defense to charges against them. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). This defense has both an "objective" and a "subjective" aspect. Id. The objective element involves a presumptive knowledge of and respect for basic, unquestioned constitutional rights. Id. (citation omitted). The subjective component refers to permissible intentions. Id. (citation omitted). Qualified immunity would be defeated if an official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury." Id. (quotation omitted) (emphasis in original). In other words, "government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818 (citation omitted).

Since Harlow, the Supreme Court has clarified the test to be used to determine whether a government official deserves good faith immunity for her actions. See Anderson v. Creighton, 483 U.S. 635 (1987). The right that the official is alleged to have violated must have been "clearly established" at the time of the alleged violation in order for the official to be held liable. See id. at 640. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted). In other words, a government official defendant is entitled to summary judgment if, "in light of the clearly established principles governing [her conduct], [she] could, as a matter of law, reasonably have believed that [her action] was lawful." Id. at 641. See also Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (qualified immunity involves a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?).

Prison officials must provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). They must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. Id. (quotations and citations omitted). More specifically, a

prison official violates the Eighth Amendment[1] when two requirements are met. Id. at 834. First, the deprivation alleged must be, objectively, sufficiently serious that the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities. See id. (citations omitted). For a claim based on a failure to prevent harm, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm. Id. (citation omitted). Second, the prison official must have a state of mind of "deliberate indifference" to inmate health or safety. Id. (citations omitted). This means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. In order to succeed in an action against a prison official, an Eighth Amendment claimant must show that "the official acted or failed to act despite [her] knowledge of a substantial risk of serious harm." Id. at 842. However, even prison officials who knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. Id. at 844. In sum, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 847.

## C. State Law Claim

California Government Code § 845.6 provides: "[A] public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6. Liability under § 845.6 is limited to only serious and obvious medical concerns that require immediate attention. Watson v. State, 21 Cal. App. 4th 836, 841 (1993); see also Kinney v. Contra Costa County, 8 Cal. App. 3d 761, 770

---

[1] The Eighth Amendment protection against cruel and unusual punishment, which provides a minimum standard of care for determining a convicted prisoner's rights, has been incorporated in the Fourteenth Amendment, which protects pretrial detainees. See Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996) (though pretrial detainees' claims arise under the due process clause of the Fourteenth Amendment, the Eighth Amendment guarantees provide a minimum standard of care for determining a prisoner's rights as a pretrial detainee, including the prisoner's rights to medical care).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

(1970) (liability not imposed where jail attendant failed to provide medication to prisoner complaining of headaches) and Lucas v. City of Long Beach, 60 Cal. App. 3d 341, 350 (1976) (no liability for failing to summon medical attention for prisoner who was intoxicated due to drugs). Section 845.6 "'limits the duty to provide medical care for prisoners to cases where there is *actual or constructive knowledge* that the prisoner is in need of *immediate* medical care.'" Watson, 21 Cal. App. 4th at 841 (citation omitted) (emphasis in original). Liability is only imposed where the public entity intentionally or unjustifiably fails to furnish immediate medical care. Id. (citations omitted). Liability under § 845.6 "is narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need (2) of *immediate* medical care and (3) fails to *summon* such care." Id. at 841-42 (emphasis in original). While there is a duty to "summon" adequate medical care, the statute does not establish "a concomitant duty to assure that [a prison's medical staff will] properly diagnose[] and treat[] the medical condition." Id. at 842.

### III. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

On Sunday, January 19, 2003, at about 8:30 a.m., the Santa Maria Police Department arrested Plaintiff. SOUF #1. Before transporting Plaintiff to the County jail, the Santa Maria police took him to the local hospital, where he was seen by a doctor and cleared for booking. SOUF #2. By 11:00 a.m., Plaintiff was booked into the Santa Maria branch of the Santa Barbara County ("County") jail. SOUF #3. Defendant Barbara Gregory ("Gregory") was the supervising correctional officer on duty in Santa Maria at that time. Id. Per jail policy, property in Plaintiff's possession, including prescription medications, was taken and inventoried during the booking. SOUF #4. The booking process included a medical screening procedure in which Plaintiff answered a series of questions from a pre-printed form. SOUF #5. His responses were recorded on the form. Id.

In response to the questions on the medical screening form, Plaintiff said that he suffered from manic depression and took prescription medications Klonopin and Prozac. SOUF #6. The form has a place to indicate if the inmate suffers from seizures, and no

---

[2] When a fact is undisputed, the Court cites to the SOUF. If Defendants raise a dispute that the Court considers irrelevant, the Court cites to the SOUF and explains why it determined that the dispute was irrelevant. If Defendants raise a relevant dispute, the Court cites to the SOGI.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

such indication was made. Id.[3] Plaintiff signed the medical screening form. SOGI #7.[4]

Correctional officer John Coyle conducted the screening interview of Plaintiff and filled out the form. SOUF #8. He gave the completed form to Gregory. Id.

Prison Health Services ("PHS") is a private corporation that contracts with the County to provide medical services to inmates within the County jail system. SOUF #10. The policy is for correctional officers in Santa Maria to call nurses employed by PHS at the Santa Barbara Main Jail when medical or mental health issues are discovered during the booking medical screening process to determine whether to transport the inmate to the local hospital or to Santa Barbara for examination by jail medical or mental health staff. SOUF #11. The PHS nurses are responsible for making the decision whether, where, and when to transport an inmate with medical or mental health issues. Id. Because Plaintiff said he had mental health problems during the screening process, arrived with prescription medication, and had already been taken to the hospital by the arresting officer, per policy, Gregory called the Santa Barbara Main Jail to inquire whether he should be transported to Santa Barbara for medical or mental health care, and if so, when that transfer should occur. SOUF #12.

At about 11:20 a.m. on Sunday, January 19,[5] Gregory spoke to PHS nurse Betty Hapeman. SOUF #13. Gregory told her the names of the medications Plaintiff listed (Klonopin and Prozac), and that Plaintiff said that he suffered from mental health problems. Id. Hapeman said that Plaintiff could remain in Santa Maria until the next regular transport to Santa Barbara, which would be on Tuesday, as no regular transport was scheduled on Sunday, or the next day because it was a holiday. Id. The parties originally agreed that Gregory telephoned medical staff at the Santa Barbara jail the next day (Monday), after Plaintiff told her that if he did not get his medication, he was likely to have a seizure. SOUF #14. However, a declaration submitted by Deborah Schutz, the Regional Vice President of PHS, in connection with a cross-motion, cast doubt on the assertion that this call took place. The Court issued an Order providing Defendants County and Gregory with the opportunity to address Ms. Schutz's assertion and the evidence she submitted. In her supplemental brief, Ms. Gregory argues that it is

---

[3] Plaintiff purports to "dispute" this assertion, but his dispute does not challenge the indications made on the form. He claims only that he mentioned seizures within four hours of his booking.

[4] The parties dispute whether Plaintiff's signature signifies that he had read it and attested to its accuracy. Id.

[5] The SOUF says Sunday, January 21, but it is clear that the parties meant Sunday, January 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL
### PRIORITY SEND

unnecessary to resolve whether the second call was placed.

The parties dispute whether Ryan displayed any symptoms of withdrawal, physical or mental, during his incarceration with Gregory. SOGI #16. Defendant asserts that "Ryan was not, at any time he interacted with Gregory, suffering any symptoms of withdrawal, physical or mental." Id. Plaintiff "disputes" this asserted fact, and asserts "Ryan may not have associated his symptoms with Klonopin withdrawal, but his treating physician does." Id. The evidence he cites in support of this dispute includes his own deposition testimony. He was asked: "Now, while you were in this cell in Santa Maria, did you start to experience any symptoms that you would associate with not having either Klonopin or Prozac?" He answered: "No."[6] His physician testified that the symptoms Ryan said he had in the jail included agitation, intense anxiety and/or anger, and insomnia.[7] In sum, Plaintiff has offered no evidence, or even an assertion, that he suffered physical symptoms while in the care of Defendant Gregory that would have corroborated his oral representations about his risk of having a seizure.

It is PHS' policy that inmates taking psychotropic medications should be transferred to the Santa Barbara Jail. SOUF #17.[8] Plaintiff had the psychotropic drug Klonopin with him when he was booked. Id. Plaintiff was transported to the Santa Barbara Jail on Tuesday, January 21. SOUF #18.

PHS Nurse Therese Brody examined Plaintiff at about 3:20 p.m. on January 21, noting in the medical record that he had last taken his medication about five days earlier and had "no sign of withdrawal." SOUF ## 15, 19. Brody did not consult with a physician regarding Plaintiff's condition. Id.

Plaintiff alleges that, in the evening of January 21, he felt early symptoms of a seizure, and in the process of getting down from the bunk fell, landing on the concrete floor. SOUF #25. Plaintiff did not have a seizure when he fell out of his bunk. SOUF #26.

---

[6] This deposition testimony was submitted by Plaintiff in support of his Motion for Summary Judgment and Partial Summary Judgment. The quoted passage appears on page 000199, at lines 17-20.

[7] The testimony of Ryan's physician was also submitted by Plaintiff in support of his Motion. Pages 000172 and 000173 include the testimony about the symptoms Ryan suffered while incarcerated.

[8] Plaintiff "disputes" this assertion, and says "[t]hat is PHS written policy. It is not how things actually worked." SOGI #17. Whether PHS actually followed its policy is a separate issue. No genuine dispute is raised about what the policy actually is.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

### IV. ANALYSIS

**A.  Evidentiary Issues**

Defendant Gregory has raised evidentiary objections to the Supplemental Declaration.  First, she argues that the Supplemental Declaration[9] contains no information with respect to the requirement that the declarant attest that the business record was made "at or near the time of the act or event." Fed. R. Evid. 803(6).  This objection is overruled.  Ms. Schutz declared that it is "PHS' custom, practice and policy to document the date, time, inmate name, inmate's complaints and the person taking the call regarding conversations with corrections officers or County personnel at the Santa Maria Branch Jail as to an inmate's complaints or concerns with regard to any medical issues.  This information is written in the Triage Log." Supplemental Declaration ¶ 3.  Though the issue could have been avoided altogether if Ms. Schutz had specified exactly when a call is recorded in the Triage Log, the amount of specificity in the Triage Log demonstrates that the record of a phone call is made "at or near the time" of the phone call itself.

Second, Gregory argues that Ms. Schutz is not a "custodian or other qualified witness."  However, Ms. Schutz declared that she was the "Health Services Administrator" for PHS at the Santa Barbara County Jail during the time period in question.  Supplemental Declaration ¶ 1.  Given her authority, Ms. Schutz probably was familiar with the manner in which the document was prepared.  See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 513-14 (9th Cir. 1989) (foundation requirement may be satisfied by a person who lacks firsthand knowledge, but is familiar with the manner in which the document was prepared).  For the purpose of this motion, the objection is overruled.

**B.  Qualified Immunity**

Defendant Gregory is entitled to qualified immunity from the federal causes of action against her.  A government official defendant is entitled to summary judgment if, "in light of the clearly established principles governing her conduct, she could, as a matter of law, reasonably have believed that her action was lawful." Anderson, 483 U.S. at 641.  Here, because Plaintiff had been cleared by the hospital, because Plaintiff's medical screening form contained no indication that he suffered from seizures, and because Gregory was given assurance from medical personnel that Plaintiff could wait until the next regular transport for medical care, it was reasonable for Defendant Gregory

---

[9]  Gregory refers to the "Schutz Declaration," but it is clear that she specifically intends to refer to the Supplemental Declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

to disregard Plaintiff's oral representations about his history of seizures. As discussed above, Plaintiff does not assert that he had any physical symptoms of a seizure during his confinement in the Santa Maria Jail, nor does he provide any other type of assertion or evidence indicating that his oral representation to Defendant Gregory was corroborated in any way by anything that should have caused alarm. Moreover, Plaintiff concedes that the nurse who examined him at the Santa Barbara Main Jail noted in the medical record that he had "no sign of withdrawal," (SOUF #19), and he does not assert that he was given Klonopin when he arrived at the main jail. Therefore, there can be no connection between Gregory's decision not to call a second time (or, assuming that she did call a second time, to call sooner or to call a third time) and the symptoms of any seizure that he ultimately suffered. In addition, he concedes that he did not have a seizure when he fell out of his bunk in the Santa Barbara Main Jail, (SOUF #26), and he does not assert that he had a seizure at any time that was caused by his withdrawal from his Klonopin. Aside from his fall from the bunk, the only other harm he refers to is "emotional distress from the mere fact that he was denied his Klonopin." Opp., 2:18-19. Assuming, *arguendo*, that Defendant Gregory had a duty to act on Plaintiff's assertions about the risk of a seizure, it was not a duty to ensure that he did not suffer "emotional distress." Summary judgment in favor of Defendant Gregory is appropriate on the federal causes of action against her. See generally McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (in order to establish deliberate indifference, a plaintiff must demonstrate a purposeful act or failure to act on the part of the defendant), overruled on other grounds by WMX Techs. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Similarly, summary judgment on the state law causes of action is appropriate. Liability under section 845.6 of the California Government Code is "narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need (2) of *immediate* medical care and (3) fails to *summon* such care." Watson, 21 Cal. App. 4th at 841-42. Because the medical screening form contained no indication that Plaintiff suffered from seizures and he displayed no symptoms, Gregory did not know or have reason to know of Plaintiff's need. To hold that his oral representations put her on notice of his need would be to establish, essentially, an inmate's right to receive medication on his own oral self-diagnosis of a medical problem.

Summary judgment in favor of Defendant Gregory is GRANTED.

Initials of
Preparer: